**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| RAYNE CROVETTI,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>WASHINGTON TOWNSHIP, KENNETH CONDIT, RAFAEL MUNIZ, STEVEN ROLANDO,<br><br>　　　　　Defendants. | Civil Action No.<br>11-cv-1834 RMB/JS<br><br>**OPINION** |

Appearances:

Jacqueline M. Vigilante
The Vigilante Law Firm
99 N. Main Street
Mullica Hill, NJ 08062
　　Attorneys for Plaintiff

Patrick J. Madden
Madden & Madden, P.A.
108 Kings Highway East – Suite 200, PO Box 210
Haddonfield, New Jersey 08033
　　Attorneys for Defendants

**BUMB**, UNITED STATES DISTRICT JUDGE:

　　Defendants Washington Township, Kenneth Condit ("Condit"), Raphael Muniz ("Muniz"), and Stephen Rolando ("Rolando") (collectively, the "Defendants") have moved for summary judgment. For the reasons that follow, that motion is GRANTED.

I.  Background[1]

Since 1998, Plaintiff Rayne Crovetti (the "Plaintiff"), a woman, has been employed as a police officer with the Washington Township Police Department (the "Department").  (Docket No. 16 at Ex. 8, Deposition Transcript of Rayne Crovetti ("Crovetti Tr.") at 31:6-11).  In 2004, Plaintiff entered the Detective Division of the Department.  (Id. at 31:21-25).  In 2007, Plaintiff was promoted to the position of Corporal.  (Id. at 32:1-9).  In 2009, Plaintiff requested, and was granted, a transfer to a squad in the Patrol Division.  (Id. at 36:18-37:16).

Typically, squads are led by a lieutenant, with a sergeant beneath the lieutenant, a corporal beneath the lieutenant, and line officers beneath the corporal.  (Compl. ¶ 18).  In Plaintiff's case, Plaintiff's new squad lacked a lieutenant. (Id.).  The squad was instead led by Sergeant Christopher Pelosi ("Pelosi"), with Plaintiff his direct subordinate as a corporal. (Id. at ¶ 15).  Condit, a Captain, had supervisory responsibility for the entire Patrol Division.  (Id. at ¶ 17).

---

[1]  All background facts are drawn from the affidavits and depositions submitted by the parties, as well as their Statements of Material Fact under Local Rule 56.1, with the facts construed in the light most favorable to Plaintiff, the nonmoving party. See Kopec v. Tate, 361 F.3d 772, 775 (3d Cir. 2004), cert. den'd, 543 U.S. 956 (2004).

On November 22, 2009, Plaintiff responded to a call from the Iron Moto restaurant that an intoxicated female had placed her child on top of the bar in a car seat, but the child had fallen out of the car seat. [Docket No. 24, Plaintiff's Supplemental Statement of Facts ¶ 227]. On the scene, Plaintiff told the female at issue that she was a "stellar mother." (Id.). While on the scene, Pelosi chastised Plaintiff for her remark and, without prompting, provided the intoxicated individual a complaint form. (Id. ¶¶ 228-229). The female at issue subsequently filed a complaint with the Department. [Docket No. 16, Defendants' Statement of Material Facts ¶ 40]. An internal affairs investigation subsequently concluded that Plaintiff had violated the Township's Rules and Regulations and Plaintiff was given an oral reprimand by Condit. (Id. ¶¶ 41-42).

Subsequent to this episode, Plaintiff complains that, during her January 2010 annual performance evaluation, Condit indicated that it had been a "hard transition" for her and criticized her performance. [Docket No. 24, Plaintiff's Supplemental Statement of Facts ¶ 273].

Later, in August 2010, the Department experienced problems with handheld radio equipment. In response, Pelosi directed the officers to use their cell phones when conducting self-initiated activity (i.e. activity that is on the officer's own initiative, as opposed to in response to a dispatch).

3

On August 16, 2010, Plaintiff met with Lieutenant Robert Borkowski to complain that relying on cell phones during self-initiated activity presented a serious safety concerns. (Crovetti Tr. at 96:23-97:11;  Borkowski agreed with Plaintiff's assessment and suggested that Plaintiff hold a meeting to discuss this issue.

On August 19, 2010, Plaintiff met with her squad for their morning squad briefing.  The meeting began, as customary, at 6:45 a.m.  Following a review of their log book, Plaintiff opened the floor to address issues the squad had with Pelosi. The issues included: (1) Pelosi's instruction to officers, when radios were not functioning, to use cell phones to contact one another while outside their vehicles; (2) Pelosi's instruction that officers receive approval for arrests from a municipal court judge on domestic violence call – a purported violation of mandatory arrest protocol on domestic violence calls; and (3) Pelosi's general lack of leadership and decision-making skills. During the meeting Officer Volpe informed Plaintiff that he had a detainee in custody that he would be handing off to Plaintiff. The meeting concluded at 7:23 a.m.  Following the meeting, Plaintiff met with Defendant Condit and reported the detainee issue as well as the group's discussion of issues with Pelosi.

On August 23, 2010, Muniz, the Chief of the Department, met with Condit and watched video of the August 19, 2010 squad

4

briefing.  Later that morning, Condit questioned Plaintiff over the radio several times whether she had "something."  Plaintiff did not "copy" and asked to give Condit a call.  On the call, Condit clarified that he had observed her speeding and was questioning whether she was responding to a call.  Plaintiff indicated that she did not realize she was speeding and apologized if she had.  Plaintiff reported that another officer laughed over the radio questioning what Plaintiff had done to warrant Condit's radio communication.  No discipline was initiated against Plaintiff in relation to this incident.  (Plaintiff's Supplemental Statement of Facts ¶ 137).  On one other occasion, Condit had pulled over another officer for speeding.  (Defendants' Statement of Material Facts ¶ 132).

The following day, on August 24, 2010, Plaintiff and Pelosi were directed to report to a meeting with Condit.  (Plaintiff's Supplemental Statement of Facts ¶¶ 41, 43).  At the meeting, Condit asked Plaintiff to address the issues she had with Pelosi.  (Id. ¶ 276).  He also suggested that she had transferred to the patrol division to be popular and questioned her as to whether she had made a driving while intoxicated arrest.  (Id. at ¶ 273; Crovetti Tr. at 146:10-147:1). Plaintiff and Pelosi subsequently had an argument.  (Crovetti Tr. at 147:4-6).  At the end of the meeting, Plaintiff was issued a performance notice.  (Defendants' Statement of Material Facts ¶ 156).  The performance notice

5

indicates that it is based on the fact that Plaintiff and her fellow officers were loafing following the August 19, 2010 meeting. (Plaintiff's Supplemental Statement of Facts ¶ 110; Docket No. 16 at Ex. 16). It also suggested that Officer Volpe was acting as a lookout for the meeting to ensure that it concluded upon Condit's arrival. (Id. ¶ 144; Docket No. 16 at Ex. 16). No other officers were disciplined in relation to the meeting. (Id. ¶ 49). However, on two other prior occasions, Condit had disciplined male supervisors based on the same articulated loafing rationale. In one case, a sergeant was issued a performance notice on the same grounds for idling following the completion of briefing for a 7 a.m. meeting. [Docket No. 16 at Ex. 17]. In another, a corporal was issued an oral reprimand for general idling by officers during the day shift. [Docket No. 16 at Ex. 18].

On September 3, 2010, Plaintiff filed a grievance that Condit's conduct violated the Department's harassment policy. (Plaintiff's Supplemental Statement of Facts ¶ 53; Crovetti Tr. at 195:18-21). In two prior complaints of harassment at the Department, the alleged harasser was suspended pending the investigation. (Plaintiff's Supplemental Statement of Facts ¶¶ 72-76). In this case, however, Condit was not suspended. (Id. ¶ 59). However, on September 9, 2010, Muniz did issue an order to Condit prohibiting Condit from contacting Plaintiff. (Id. ¶

61).  Plaintiff was notified about the order on October 6, 2010 and received a copy of it on October 29, 2010.  (Crovetti Tr. at 237:16-239:8; Docket No. 24 at Ex. 17 at p. 24).  On September 14, 2010, Plaintiff's grievance was denied.  From September 9, 2010 until October 6, 2010, Plaintiff used accrued vacation time to avoid having to work in the same building as Condit. (Plaintiff's Supplemental State of Fact ¶ 171).

Rolando, a Sergeant, conducted an investigation into Plaintiff's claims.  (Id. ¶ 141).  His investigation determined that Condit did not violate Department workplace harassment policy, but did find that the performance notice did not conform to departmental policy.  [Docket No. 16 at Ex. 22 at p. 14]. Consequently, the performance notice was reissued.  (Plaintiff's Supplemental State of Fact ¶ 144).  Rolando's investigation report is dated September 21, 2010.  (Docket No. 16 at Ex. 22 at p. 15).

On October 6, 2010, Muniz received a letter from Plaintiff's psychologist indicating that Plaintiff was "complaining of symptoms of stress and anxiety" from "a combination of personal and work-related factors" and supporting a request for a leave of absence by Plaintiff, who had by then exhausted her vacation and personal hours.  (Defendants' Statement of Facts ¶ 231; Plaintiff's Statement of Facts ¶¶ 204-217).  In response, Muniz placed Plaintiff on administrative

7

leave, pending a positive result on a fitness for duty examination. (Plaintiff's Statement of Facts ¶¶ 217, 210). While on leave, Plaintiff's badge, gun, car, and identification were collected from her. (Id. ¶ 217). Plaintiff was subsequently evaluated by Dr. Jennifer Kelly, a licensed psychologist, who, on November 19, 2010, pronounced Plaintiff fit for duty. (Defendants' Statement of Facts ¶¶ 237, 239).

Plaintiff returned to work on December 3, 2010 for a different squad. (Plaintiff's Statement of Facts ¶ 317). She continued to use paid time off to avoid being present when Condit was in the building and did so until Condit retired in May 2011. (Id. ¶ 321).

Plaintiff subsequently filed suit in this Court based on federal question jurisdiction. Complaint ¶ 7). Plaintiff's Complaint makes six claims – one federal constitutional claim and five claims under New Jersey law:

(1) that Defendants discriminated against her on the basis of gender in violation of New Jersey's Law Against Discrimination ("LAD");

(2) that Defendants created a hostile work environment in violation of LAD;

(3) that Defendant Washington Township violated the Conscientious Employee Protection Act ("CEPA");

(4) that Defendants violated LAD by retaliating against her in response to complaints of gender discrimination and safety violations;

(5) that Defendants Muniz, Condit, and Rolando violated Plaintiff's First Amendment rights by retaliating against her and are liable under 42 U.S.C. § 1983. and

(6) that Defendant Condit intentionally inflicted emotional distress on Plaintiff.

[Docket No. 1].

II. Standard

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it will affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." Id. at 248.

When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence: all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983). However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. Anderson, 477 U.S. at 252. Further, a court does not have to adopt the version of facts asserted by the nonmoving party if those facts are "utterly discredited by the record [so] that no reasonable jury" could believe them.

Scott v. Harris, 550 U.S. 373, 380 (2007).  In the face of such evidence, summary judgment is still appropriate "where the record . . . could not lead a rational trier of fact to find for the nonmoving party . . . ."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a 'fair-minded' jury could 'reasonably' decide.'"  Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989)(quoting Anderson, 477 U.S. at 265).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)).  Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'"  Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).  The non-movant's burden is rigorous: it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment.  Orsatte v. N.J. State Police, 71 F.3d 480, 484 (3d Cir. 1995);

Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228 (3d Cir. 2009)("[S]peculation and conjecture may not defeat summary judgment.").

III. Analysis

The Court first addresses Plaintiff's First Amendment Claim.

A. First Amendment Claim

For a public employee to succeed on a First Amendment retaliation claim, a plaintiff must demonstrate that: (1) it engaged in speech about a matter of public concern; (2) plaintiff's interest in speech outweighs any countervailing governmental interest in promoting the efficiency of the public service it provides through its employees; and (3) that the plaintiff's speech was a substantial or motivating favor in the alleged retaliatory action. Baldassare v. New Jersey, 250 F.3d 188, 195 (3d Cir. 2001). With respect to the first prong, in evaluating whether a matter is of public concern, courts consider whether the speech "is important to the process of self-governance that communications on this topic, in this form and in this context, take place." Zelinski v. Penn. State Police, 108 F. App'x 700, 707 (3d Cir. 2004). A public employee's speech is not protected, however, even if it touches on a matter of public concern, if it was made pursuant to the employee's official duties. Gorum v. Sessoms, 561 F.3d 179, 185 (3d Cir. 2009). "Factors considered [in this analysis] include

whether the speech fell within the individual's job duties, whether it related to special knowledge or experience acquired on the job, whether it was made inside or outside the work place, and whether it concerned the job's subject matter." Houston v. Twp. of Randolph, No. 11-4810, 2013 WL 1192579, at *11 (D.N.J. Mar. 21, 2013). With respect to the third prong, a defendant can defeat this prong by demonstrating that it would have taken the same action, absent the protected activity. Gorum, 561 F.3d at 184.

Plaintiff claims that she engaged in protected speech concerning the cell phone issue and her own discrimination. Defendants argue, and this Court agrees, that this speech does not qualify as protected speech. With respect to the cell phone issue, that speech was made pursuant to Plaintiff's official job duties and not as a public citizen because it was made at the police station to fellow officers concerning the safe performance of their job duties. Morris v. Phila. Hous. Auth., 487 F. App'x 37, 39 (3d Cir. 2012)("We have consistently held that complaints up the chain of command about issues related to an employee's workplace duties—for example, possible safety issues or misconduct by other employees—are within an employee's official duties."); Houston, 2013 WL 1192578, at *13 (finding firefighter's speech concerning safety issues with official procedure was speech as employee and not as citizen).

With respect to the discrimination claim, because that claim related solely to her own claims of discrimination, was not made in public, and did not involve either a broader, systemic practice of discriminatory treatment or conduct implicating an elected official, it did not relate to a matter of public concern. Bell v. City of Philadelphia, 275 F. App'x 157, 159 (3d Cir. 2008)(finding no public concern at issue when complaining solely about "own abuse" and not systemic issue); Feldman v. Comm. College of Allegheny, 85 F. App'x 821, 825 (3d Cir. 2004)(finding discrete complaint of racial and religious animus was private matter and not one of public concern); Zelinski, 108 F. App'x at 708 (finding complaint of sexual harassment was not public concern but was instead private matter where it was not raised to the public and did not concern an elected public official); Torres v. City of Philadelphia, 907 F. Supp. 2d 681, 687 (E.D. Pa. 2012)(finding same when complaint was about one incident and distinguishing between incidents involving elected officials); Middleton v. Deblasis, 844 F. Supp. 2d 556, 565 (E.D. Pa. 2011)("Instead, plaintiff 'complain[s] solely about [her] own 'abuse' and mistreatment by superiors,' which is not a matter of public concern.").

Accordingly, Plaintiff's First Amendment claim is DISMISSED.

B. <u>Plaintiff's Remaining State Law Claims</u>

Having dismissed Plaintiff's lone federal claim, and with this Court's subject matter jurisdiction premised on federal question jurisdiction, this Court must determine whether it will exercise supplemental jurisdiction over Plaintiff's remaining state law claims. <u>Flemming v. Nettleton</u>, No. 10-cv1958, 2012 WL 5943644, at *4 (D.N.J. November 26, 2012) (citing <u>Kalick v. Northwest Airlines Corp.</u>, 372 F. App'x 317, 322 (3d Cir. 2010)). Absent extraordinary circumstances, district courts should not exercise supplemental jurisdiction over state law claims. <u>Id.</u> (citing <u>Shaffer v. Bd. of Sch. Dirs. of Albert Gallatin Area Sch. Dist.</u>, 730 F.2d 910, 912 (3d Cir.1984)). Because no extraordinary circumstances are evident here, this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Accordingly, Plaintiff's state law claims are DISMISSED, without prejudice.[2]  *See Gibson v. Weber*, 433 F.3d 642, 647 (8th Cir. 2006) (where district court had granted summary judgment to defendants on inmate's § 1983 claim that medical officials were deliberately indifferent to his diabetic foot wound, court did not abuse discretion by declining to exercise

---

[2] Since the statute of limitations on Plaintiff's state claims is "tolled while the claim is pending and for a period of 30 days after it is dismissed," 28 U.S.C. § 1367(d), this Court discerns no unfairness in declining to decide the state claims. *See Munoz v. City of Union City*, 481 F. App'x 754, 761 n.8 (3d Cir. 2012).

jurisdiction over the remaining state malpractice claim); *King v. County of Gloucester*, 302 F. App'x 92, 99 (3d Cir. 2008) (finding no abuse of discretion where court declined to exercise supplemental jurisdiction over state claims after dismissal of federal claims).

IV. Conclusion

For all these reasons, Defendants' motion for summary judgment is GRANTED.

s/Renée Marie Bumb<br>
RENÉE MARIE BUMB<br>
UNITED STATES DISTRICT JUDGE

Dated: July 31, 2013